# PHILADELPHIA, TO USE, v. S. T. EVANS.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
NO. 2 OF PHILADELPHIA COUNTY.

Argued January 8, 1891—Decided January 19, 1891.
[To be reported.]

*(a)* By § 40, act of February 2, 1854, P. L. 43, constituting the present
city of Philadelphia by consolidating the old city with certain incorporat-
ed districts and townships, it is provided that the paving of streets, at the
expense of the owners of abutting property, may be prescribed by ordi-
nance, and that liens may be filed for the same, " as is now practiced and
allowed by law : "

1. The expression quoted does not apply to the kind of paving, but to
the filing of the lien ; and under that act and its supplements, the city
is not restricted to the use of such pavements as were known and used in
1854, but councils have discretionary power to pave streets at the cost of
abutting owners, with granite blocks, or other more durable and expen-
sive paving than any used at that time.

2. The fact that a street, except certain spaces in the middle thereof re-
served for use as market places, has already been paved with cobble
stones, at the expense of property owners, cannot exempt abutting own-
ers from the cost of paving such spaces, upon the termination of their use
for market purposes, nor prevent the city from adopting for them a more
expensive paving and making assessments for its entire cost.

*(b)* A special act, incorporating a street-railway company, subjected it
to the provisions of all ordinances of the city then existing or thereafter
to be passed, regulating passenger railways ; and, at the time of such in-
corporation, there was in force a city ordinance imposing upon such com-
panies the duty of paving the costs of paving any street, avenue or alley
occupied by them :

3. Said act of incorporation did not impose upon the company thereby
created a statutory duty of paving streets, in such a sense as to prevent
the city councils from terminating its obligation to pay for such paving
by repealing said ordinance ; the duty imposed by the act was not a fixed
but a shifting one, subject to regulation or repeal at the will of councils
by any future ordinance.

4. The fact that an unusual and unsuitable season was selected by the
city authorities for paving a particular street, whereby its cost was in-
creased, does not present a defence under § 1, act of April 19, 1843, P. L.
343, allowing abutting owners to take defence to assessments for paving,
on the ground that the price charged is too high, when there is nothing
to show that such selection was an improper exercise of discretion.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 409 January Term 1890, Sup. Ct.; court below, No.
117 June Term 1889, C. P. No. 2.

On June 19, 1889, the city of Philadelphia, to the use of B.
M. Shanley, and John M. Mack, trading as Shanley & Mack,
filed a municipal claim against Samuel T. Evans, owner, etc.,
of a certain lot of ground on Girard Avenue, for the paving of
said avenue in front of the defendant's lot, "in the space for-
merly occupied as a market place," with granite blocks; the cost
of such paving being assessed at $2.98 per square yard, and the
total amount for which the claim was filed being $110.28.

A scire facias upon the claim having been issued, the defend-
ant on December 6, 1889, filed an affidavit of defence, making
the following averments:

"The claim on which this writ is issued seeks to enforce a
charge against the property therein described, of which depo-
nent is the owner, for paving so much of the unpaved space re-
served for market purposes as was in front of the property.
The kind of paving which is in the other part of the street
now, and before the paving herein charged was directed to be
done, is cobblestone, and that sued for is granite block, charged
at the price of two dollars and ninety-eight cents for each square
yard; and deponent is advised that said paving has been in one
of the incorporated districts of the county of Philadelphia,
whose authority to file claims for paving was founded on the
act of April 16, 1840, § 9, P. L. 412. Said districts exercised
said power by paving with cobble stones, until the act of Febru-
ary 2, 1854, and had, in fact, exercised the power in this local-
ity by paving that done with cobble stones.

"By the act of February 2, 1854, which extended the bound-
aries of the city to embrace the whole of the territory of the
county, no new power was granted, but the then existing
practice was confirmed in § 40, which provided that 'it may be
prescribed by ordinance that paving of streets . . . . . shall be
done at the expense of the owners of the ground in front
whereof such work shall be done, and liens may be filed by the
said city for the same, as is now practiced and allowed by law.'
The authority to continue paving only of the same character,

if the owners are sought to be charged, is also made clear by the limitation of the charge therefor in a supplement to the said act of 1854, that of § 8, act of April 21, 1855, P. L. 266, which fixes the charge 'for street paving at one dollar per square' yard, and all extra or further charge . . . . . shall be paid out of general taxation;' and deponent is advised that although by an act passed March 30, 1866, P. L. 354, said limitation only is repealed, and the power to fix charges conferred upon the councils, yet no power is given to change the character of the paving existing in a street at the expense of the owners. And deponent is advised that there is no authority of law to charge his ground with the cost of paving with granite blocks.

" And deponent further saith that Girard Avenue, at the time the paving of the market plots was authorized to be paved, was occupied by the tracks of the Richmond & Schuylkill Passenger railway which was incorporated by act of March 26, 1859, P. L. 241, and by the sixth section was made subject 'to the provisions of all ordinances heretofore or that may be hereafter passed by the councils of the city regulating city passenger railways;' that, at the time of said charter, the only ordinance in force was that of July 7, 1857, the third section of which provided, among other things, that all passenger-railroad companies 'shall be at the entire cost and expense of maintaining, paving, repairing, and re-paving that may be necessary upon any road, street, avenue, or alley occupied by them,' which duty deponent is advised operated upon said railway company as though in the text of its charter, and that by reason thereof the ground of deponent is relieved from the cost and charge of paving, if otherwise it was liable.

" And deponent further saith that the price charged for said paving is too much, and was paid at the rate fixed, by reason of a capricious exercise of power by the director of public works. It has been the uniform practice to exclude the months of December to March, both inclusive, as unfit months to do paving, and this work was done under the authority of an ordinance passed March 28, 1888, Ordinances, 107, which in nowise sought to change this prudent practice. By the delay of the grading, the contract therefor being made under an ordinance of September 25, 1888, bids were invited by the director

of public works so that the paving could not be reasonably done before December 1st, and a provision was inserted compelling the completion of the work before December 31st, under a daily penalty for non-completion. This caused an advance in the cost, of eighty cents a yard, and, the work being done in December, has been the subject of constant repair since. And deponent is advised, if otherwise liable, he would only be liable for the cost of said work, done in the usual manner, which would have been about two dollars and ten cents a square yard."

The plaintiff thereupon entered a rule for judgment for want of a sufficient affidavit of defence, upon the hearing whereof it was agreed by counsel that the court should consider, if relevant, with the same effect as if it were a part of the affidavit of defence, an ordinance enacted by the city on April 1, 1859, containing the following provisions:

" § 1. . . . . That all streets or highways, which are unpaved at the time of laying the rails, shall be kept in good traveling order by the railroad company, until the same shall be paved by the owners of property thereon; after which they shall be re-paved, repaired, and kept in good order at the proper cost of the railroad company occupying the same."

" § 6. That so much of the third section of the ordinance, approved July 7, 1857, to which this is a supplement, as provides that the railroad companies shall pave any street that has not heretofore been paved, be and the same is hereby repealed."

—After argument, the court, without opinion filed, made the rule for judgment absolute, and judgment was thereupon entered for $117.85. The defendant then took this appeal, specifying that the court erred:

1. In entering judgment for the plaintiff.

*Mr. David W. Sellers,* for the appellant:

1. No authority exists to charge the defendant's property with the cost of granite paving. Before the consolidation of the city of Philadelphia with the incorporated districts and townships which occupied the residue of Philadelphia county, all public work on highways, within the area of the old city, was done at the expense of the fund arising from general tax-

ation ; while, in the districts, the paving of streets was done by special and local taxation, the ground fronting on the streets being charged at a fixed rate. The proceedings to collect such charges for paving were founded on §§ 9, 10, act of April 16, 1840, P. L. 412. Although that act does not mention the kind of paving, the only kind in use for more than fifty years prior to 1854 was of cobble stones, and the consolidation act of February 2, 1854, P. L. 43, expressly recognized this kind of paving, by providing, in § 40, that paving might be done at the expense of lot-owners, and liens therefor filed by the city, " as is now practiced and allowed by law ; " and the first supplement thereto, the act of April 21, 1855, P. L. 266, impliedly does so, by limiting the charge for paving to $1 per square yard, the price of cobble stones. So general was the rule to use paving stones only, that by the act of April 5, 1859, P. L. 360, a " measurer of paving stones " was created. Subsequent legislation recognized the general rule that the city cannot compel property owners to pay for more expensive kinds of paving : Act of April 18, 1867, P. L. 1303 ; and see Hammett v. Philadelphia, 65 Pa. 157.

2. The paving of the middle of a street with different material from that adopted for the sides, will not justify charging the excess of the cost against abutting properties ; having once adopted a certain kind of paving for a street, the city has exercised its discretion and cannot make a change, except on petition of a majority of the property owners, under the act of April 18, 1867, P. L. 1303 : Wistar v. Philadelphia, 80 Pa. 512 ; Slocum v. Philadelphia, 11 W. N. 167. But the cost of paving the middle of Girard Avenue cannot be charged against the property owners at all, for the reason that the act of March 26, 1859, P. L. 241, has imposed it upon a street-railway company, as is set forth in the affidavit of defence. Although the primary duty to pave and repair is in the city, the street-railway company is responsible for the cost of the paving : Philadelphia v. Weller, 4 Brewst. 25 ; Frankford etc. Ry. Co. v. Philadelphia, 17 W. N. 245 ; Harrisburg v. Railway Co., 1 Pears. 298. Ex necessitate rei, then, the abutting ground must be relieved, as double payment is a thing unknown to the law. The ordinance of April 1, 1859, which it was agreed might be considered by the court, is wholly irrelevant. The burden imposed upon

the railway company by the act of 1859 cannot be removed from it except by a later statute: Ridge Ave. Ry. Co. v. Philadelphia, 124 Pa. 219; Chicago v. Sheldon, 9 Wall. 50. Moreover, the price charged in the present case is too much. This defence is always permitted: § 1, act of April 19, 1843, P. L. 342. And, the practice of excluding the months from December to March, both inclusive, from the period regarded as suitable for paving work, is founded on an ordinance, cited in Northern Liberties v. Gas Co., 12 Pa. 318.

*Mr. Edwin O. Michener*, for the appellee:

1. The words, "as now practiced and allowed by law," in the consolidation act of 1854, clearly refer only to the manner of filing liens. The act of April 21, 1855, P. L. 266, cited by the appellant, was expressly repealed by § 1, act of March 30, 1866, P. L. 354, and the city councils were given full power to fix the price for paving. By an ordinance, enacted June 12, 1868, the price for cubical-block paving was fixed at not more than $3 per square yard. The act of April 18, 1867, P. L. 1303, was passed at a time when the Belgian-block paving had not come into general use, and before councils had authorized it and fixed a price for it. The whole legislation on the subject of street paving in Philadelphia is now contained in § 40, act of February 2, 1854, P. L. 43, the act of 1866, and the ordinance of 1868, already referred to.

2. The city has a right to pave the middle of a street with granite blocks, at the expense of the property owners, after the sides have been paved with cobbles: Alcorn v. Philadelphia, 112 Pa. 494. The case of Wistar v. Philadelphia, 80 Pa. 512, is not in point. It exhibits an attempt to make the property owner pay for a new and more expensive curb, after the taxing power had been exhausted, he having been already compelled to pay for one curb. The act of March 26, 1859, P. L. 241, did not fix upon the railway company any specific duty, but simply subjected it to all ordinances theretofore passed or that might thereafter be passed by councils, and the regulating power has seen fit to repeal the ordinance requiring the paving of the street by the company. And that part of the affidavit which attempts to set up a defence as to the price of the work, is fatally defective, in not averring that the price charged

was too much at the time the work was done.    The award of
the contract at that price, and at that time, was in the discre-
tion of the director of public works : Commonwealth v. Mitch-
ell, 82 Pa. 343 ; article IV., act of June 1, 1885, P. L. 42.

OPINION, MR. CHIEF JUSTICE PAXSON :

This was a municipal claim for paving a part of Girard Av-
enue with granite blocks.    The portion paved was the centre
of the street, formerly reserved for market purposes.   The
sides of said street are now, and have been for many years,
paved with cobble stones.    The defendant is an owner of pro-
perty fronting thereon, and resists the claim of the city for
various reasons which are set out fully in his affidavit of defence.

In the first place, he alleges that the city has no right to
substitute granite paving for the older and cheaper cobble
stone, and to charge the increased cost thereof upon the prop-
erty owner.    It is doubtless true that at the time of consolida-
tion in 1854, and prior thereto, the cobble-stone pavement was
the only one used in the districts of Penn and the Northern
Liberties, and that no owner of property had been charged with
any other kind of paving.    It by no means follows, however, that
because this particular kind of pavement was the only one in
use for many years, that the municipal authorities are restricted
to it for the future.    The cobble stones answered very well in
their day.    It was a cheap pavement, and was a great improve-
ment over muddy streets.    But the city has grown since then
in wealth, population, and business, and the pavements of forty
years ago may be wholly unsuited to the present growth and
wants of the city.    This we may fairly infer from the action
of the city authorities in ordering a more durable and expen-
sive pavement.    The kind of pavement to be laid down upon
a particular street must necessarily be left to the discretion of
city councils, unless we find some legislative restriction im-
posed upon it.    Such restriction is certainly not to be found in
§ 40 of the act of February 2, 1854, P. L. 43, (consolidation
act,) which provides that " it may be prescribed by ordinance
that paving of streets, except at the intersections thereof, and
of footways and laying of water-pipes within the limits of the
city, shall be done at the expense of the owners in front where-
of such work shall be done, and liens may be filed by said city

for the same, as is now practiced and allowed by law." We
think it very clear that this language does not apply to the
kind of paving; the matter that is permitted to be done, as
" now practiced and allowed by law," is the filing of the lien.
We find nothing in the acts of assembly or elsewhere, which, in
express terms or by necessary implication, restricts the city to the
antiquated and unsatisfactory cobble pavements of our fathers.

Nor are we able to see much force in the further objection
that, inasmuch as the city has paved the centre of the street
with a more expensive pavement than that established at the
sides, the excess of such cost cannot be charged against the
ground. It is to be observed that Girard Avenue is a wide
street, the centre of which has now been paved for the first
time. The sides, as before observed, were paved many years
ago with cobble stones. This portion of it has been paid for ·
by the owners of property abutting thereon. We are unable
to see how the fact that they have paid for the work done
upon this portion of the street, can exempt them from the
payment of what is now necessary to be done upon the re-
mainder, or middle portion. Their property was originally
liable to be assessed for the paving of the street for its entire
width; that it has hitherto been enforced against them only as
to part, has done them no harm. And the fact that a cobble-
stone pavement was regarded as sufficient many years ago for
the sides of the street, is no reason why a granite pavement
should not now be laid in the middle, if, in the discretion of
councils, such pavement is required: See Slocum v. Philadel-
phia, 11 W. N. 167; Alcorn v. Philadelphia, 112 Pa. 494.

It was urged, as a further defence, that the duty of pav-
ing this street has been imposed by statute upon a passenger-
railway company. There would be much force in this position,
if it is true in the broad sense claimed for it. Where a city
passenger-railway company is required by its charter to pave
the street upon which its road is laid, it may be that such duty
would be shifted from the abutting property owner to such
company. But I do not understand that any such duty is to
be found in the charter of the company which occupies this
street. By the act of March 26, 1859, P. L. 241, incorporating
the Richmond & Schuylkill Passenger Railway Company, it
was made subject " to the provisions of all ordinances hereto-

Opinion of the Court.

fore, or that may be hereafter passed, by the councils of the city regulating city passenger railways." It is unnecessary to review at length the various ordinances of city councils affecting such railways. A brief reference to them is sufficient. The third section of the ordinance of July 7, 1857, provides " that all railroad companies shall be at the entire cost and expense of maintaining, paving, repairing, and re-paving that may be necessary upon any road, street, avenue, or alley occupied by them." The ordinance of April 1, 1859, provided some additional regulations for this class of corporations, and § 1 thereof declared " that all streets or highways which are unpaved at the time of laying the rails shall be kept in good traveling order by the railroad company, until the same shall be paved by the owners of property thereon ; after which they shall be repaired, re-paved, and kept in good order at the proper cost of the railroad company;" and by § 6, " that so much of the third section of the ordinance approved July 7, 1857, to which this is a supplement, as provides that the railroad companies shall pave any street that has not heretofore been paved, be and the same is hereby repealed."

We find nothing in the foregoing, or in any other statute or ordinance, which places the first cost of paving this street, or that portion of it upon which the granite pavement has been laid, upon the street-railway company now occupying it. The act of 1859, as before observed, makes the company subject to the provisions of the ordinances of the city regulating such roads ; not only subject to such ordinances as were then in existence, but also to those " that may be hereafter passed;" and we have seen that the third section of the ordinance of July 7, 1857, which would seem to impose such original paving upon the railway company, has been repealed. The duty which the act of 1859 imposed upon the company was a shifting not a fixed one. It was to be regulated by councils from time to time, and the authority which imposed the duty could take it away. It had no more of permanency about it than the license fees for running the cars. Had the legislature imposed this duty upon the company as a condition of its charter, it would have been beyond the control of city councils, and we might then have had the question properly before us, whether

the imposition of such duty upon the company relieved the property owner from the burden or cost of paving.

The fourth ground of defence is, that the price charged for the paving was too high. The act of April 19, 1843, P. L. 342, permits this defence to be taken, and had the affidavit of defence contained this averment, without more, we might have been compelled to send the case to a jury. But the affidavit appears to have been prepared, with great candor on the part of the learned counsel for the defendant, so as to develop the whole case ; and from it we learn, not that the price was too high for the time of year that the paving was done, but that an unsuitable time, to wit, the winter season, had been selected by the director of public works in which to lay down the pavement. We do not, of course, know what public exigency required that this pavement should be put down at such an unusual season for such work. It is easy to see that it would not only increase the expense, but possibly impair the quality of the paving. We do not find anything, however, to interfere with the discretion of the municipal authorities in this matter, and we cannot assume that it was done without cause.

After a careful consideration of the case, we do not see any sufficient reason to disturb the action of the court below, and

The judgment is affirmed.

